UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE PACIFIC COAST ROOFERS PENSION PLAN et al., <br><br>Plaintiffs, <br><br>v. <br><br>PETERSEN-DEAN, INC. dba PETERSENDEAN, et al. <br><br>Defendants. | Case No. 18-cv-06824-NC <br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. No. 52 |

In this lawsuit, plaintiffs Board of Trustees of the Pacific Coast Roofers Pension Plan and the Pacific Coast Roofers Pension Plan allege that defendants Petersen-Dean, Inc. and other related corporations (collectively, "Petersen-Dean") are required to pay the Plan a significant sum as a result of Petersen-Dean's withdrawal from the multiemployer pension plan. *See generally*, Dkt. No. 1. Petersen-Dean concede that under existing Ninth Circuit law, they are generally required to pay the amount in dispute while arbitrating its challenge to its withdrawal liability. Dkt. No. 62 at 4. Petersen-Dean, however, requests that the Court follow and expand on the "equitable exception" to the general "pay now, dispute later" rule recognized by the Fifth and Seventh Circuits. *Id.* at 4–5. No authority exists for Petersen-Dean's requested expansion of the equitable exception, however, and the Court accordingly GRANTS the Plan's motion for summary judgment.

## I. Background

### A. Factual Background[1]

The Pacific Coast Roofers Pension Plan is an employee benefit plan and multiemployer plan as defined under ERISA. *See* Dkt. No. 54 ("Sargent Decl.") ¶ 2. That plan is administered by plaintiff Board of Trustees. *Id.* ¶ 3. Petersen-Dean, Inc. and various other related employers were signatories to various collective bargaining agreements that required them to make benefit contributions to the Plan. *Id.* ¶ 5.

By March 2017, Petersen-Dean ceased to have an obligation to contribute to the Plan. *Id.* ¶ 6. Pursuant to ERISA § 4203, 29 U.S.C. § 1383, the Plan's third-party administrator determined that Petersen-Dean had completely withdrawn from the Plan, making Petersen-Dean liable to the Plan for withdrawal liability. *Id.* The Plan's actuary then calculated Petersen-Dean's withdrawal liability, based on Petersen-Dean's partial withdrawals in 2014, 2015, and 2016, and a complete withdrawal in 2017. *Id.* ¶ 7. Under the Plan's assessment of Petersen-Dean's withdrawal liability, Petersen-Dean was required to make a lump sum payment totaling $5,344,325. *Id.*, Ex. A.

On July 17, 2017, the Plan's third-party administrator sent Petersen-Dean a notice of withdrawal liability. *Id.* ¶ 8; *see also* Dkt. No. 53 ("Minser Decl."), Ex. A. In response, Petersen-Dean requested reconsideration of the Plan's assessment of withdrawal liability and demanded arbitration. *See id.*, Ex. F. That arbitration remains pending and Petersen-Dean has not made any withdrawal liability payments. *See id.* ¶¶ 4, 7; *see also id.*, Ex. C.

Petersen-Dean asserts that they are currently in financial distress and that they are exploring options to avoid "the most extreme measures available." *See* Dkt. No. 63 ("Milionis Decl.") ¶¶ 2, 3. As such, Petersen-Dean argues that entry of judgment against them would place them in a financially untenable situation and reduce the likelihood of the Plan's recovery. *Id.* ¶ 4.

### B. Procedural History

The Plan filed their complaint on November 9, 2018, against Petersen-Dean

---

[1] The following facts are undisputed except where indicated.

alleging claims for payment of withdrawal liability under ERISA, 29 U.S.C. § 1381, and failure to provide required information under ERISA, 29 U.S.C. § 1399(a). *See* Dkt. No. 1 ¶¶ 37–56. The Plan filed their instant motion for summary judgment on March 30, 2020. *See* Dkt. No. 52. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 5, 21 at 8.

## II. Legal Standard

Under Federal Rules of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Once the moving party meets its burden, then the non-moving party must cite "particular parts of materials in the record" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "genuine issue" exists if a reasonable jury could find for the non-moving party. E.g., *Open Text v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 428365, at *1 (N.D. Cal. Jan. 30, 2015). On summary judgment, the Court does not make credibility determinations or weigh conflicting evidence, as these determinations are left to the trier of fact at trial. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

## III. Discussion

The sole issues in this case are whether the Court should adopt an equitable exception to the "pay now, dispute later" rule for withdrawal liability under ERISA and, if so, whether the Court should expand that exception to allow Petersen-Dean to avoid making payments even where the Plan's claim is not frivolous. Petersen-Dean does not oppose the Plan's calculation of the amount of withdrawal liability. *See* Dkt. No. 62.

Under ERISA and its later amendment through the Multiemployer Pension Plan Amendments Act ("MPPAA"), employers who withdraw from a multiemployer pension plan are required to "fund a proportionate share of the fund's 'unfunded vested benefit liability.'" *Bd. of Trustees v. Thompson Bldg. Materials, Inc.*, 749 F.3d 1396, 1399 (9th

1   Cir. 1984) (citing 29 U.S.C. § 1381).  The plan's trustees are required "to determine the
2   employer's allocable share of the unfunded vested benefit liability and to collect the
3   amounts due."  *Id.* (citing 29 U.S.C. § 1382).  Disputes arising between the plan and the
4   employer must be resolved through arbitration.  *Id.* (citing 29 U.S.C. § 1401(a)).

5         ERISA further provides that "[p]ayments shall be made by an employer in
6   accordance with the determinations made under this part until the arbitrator issues a final
7   decision with respect to the determination submitted for arbitration . . . ."  29 U.S.C.
8   § 1401(d).  An employer that fails to pay while the arbitration is pending is considered
9   delinquent in making required plan contributions.  *Id.*  If the arbitrator ultimately
10  determines that the employer overpaid its withdrawal liability, the plan must return the
11  overpayment with interest.  *See* 29 C.F.R. § 4219.31(d).

12        In *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Mar-Len, Inc.*, 30 F.3d
13  621 (5th Cir. 1994) and *Trustees of Chicago Truck Drivers, Helpers & Warehouse*
14  *Workers Union (Indep.) Pension Fund v. Central Transportation, Inc.*, 935 F.3d 114 (7th
15  Cir. 1991), the Fifth and Seventh Circuits, respectively, adopted an equitable exception to
16  the "pay now, dispute later" rule in § 1401(d).

17        The genesis of this exception is found in the Seventh Circuit's decision in *Robbins*
18  *v. McNichols Transportation Co.*, 819 F.2d 682 (7th Cir. 1987).  There, the Seventh
19  Circuit concluded that district courts "have a measure of discretion whether or not to use
20  injunctive power to compel interim payments" while arbitration is pending.  *McNichols*,
21  819 F.2d at 685.  The court reasoned that although Congress "provided that interim
22  payments are to be made[,] [i]t has not expressly required courts to use injunctive powers
23  to compel the payments in every case."  *Id.*  Thus, the Seventh Circuit concluded that
24  courts have some "degree of discretion [to] alleviate[] concern that there be unnecessarily
25  harsh and unintended results."  *Id. at* 686.  Before a district court can excuse interim
26  payments, however, it must "consider[] the employer's probability of success before the
27  arbitrator, and the gravity of any economic hardship caused by payment of installments
28  while awaiting decision . . . ."  *Id.* at 685.

4

In *Central Transportation*, the Seventh Circuit clarified and narrowed *McNichols* holding. There, the Seventh Circuit emphasized that the *McNichols* exception was "at most a recognition that if the fund's claim is frivolous—if the arbitrator is almost certain to rule for the employer—then the plan is engaged in a ploy that a court may defeat." *Central Transp.*, 935 F.3d at 119. If a "plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator." *Id.* The Fifth Circuit followed the Seventh Circuit's reasoning in *Mar-Len*, limiting the equitable exception to instances where the plan's claim for withdrawal liability "is frivolous or not colorable." 30 F.3d at 626.

As out-of-circuit precedent, neither *McNichols*, *Central Transportation*, nor *Mar-Len* are binding on this Court. The Ninth Circuit has not directly addressed whether this exception exists and the Sixth Circuit has declined to follow *McNichols* and its progeny. *See Findlay Truck Line, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738 (6th Cir. 2013) ("[C]ongressional intent, as well as the plain text of the MPPAA, discourages courts from making their own equitable exceptions to the MPPAA.").

It is unnecessary, however, for the Court to predict whether the Ninth Circuit would adopt the *McNichols* exception because there is no support for Petersen-Dean's suggested expansion of *McNichols*. Both the Fifth and Seventh Circuits have emphasized the narrowness of the equitable exception. In *Mar-Len*, the Fifth Circuit noted that "withdrawing employers are often financially troubled companies." 30 F.3d at 626. Thus, "[d]eferring interim withdrawal liability payments may ultimately leave a pension fund with an obligation to the workers without a corresponding source of funds." *Id.* Dropping the frivolousness requirement from the *McNichols* exception would effectively permit the exception to swallow the general rule and would undermine Congress's intent in passing the MPPAA. Indeed, every court to consider whether an exception exists to the "pay now, dispute later" rule have suggested that the threshold for such an exception would be very high. *See Findlay*, 726 F.3d at 751 (collecting cases).

Because Petersen-Dean does not argue that the Plan's claims of withdrawal liability are frivolous or not colorable, Petersen-Dean must make interim payments of their withdrawal liability. In the alternative, Petersen-Dean suggests that the Court could decline to enter summary judgment and stay proceedings until settlement efforts are exhausted. *See* Dkt. No. 62 at 5. Petersen-Dean, however, has provided no support for this outcome. The Plan opposes any further delay for settlement purposes.

Because there is no support for Petersen-Dean's suggested expansion of the *McNichols* exception and they do not otherwise oppose the Plan's motion for summary judgment, the Court GRANTS the Plan's motion for summary judgment.

## IV. Conclusion

The Court GRANTS the Plan's motion for summary judgment. No claims remain for further adjudication.

Two issues remain for the parties' consideration. First, it appears that some Defendants no longer exist and did not answer the complaint. *See, e.g.*, Dkt. No. 11 at 2 n.1. It is unclear whether the Court may enter judgment against those Defendants. Second, because the arbitration remains pending, it may be premature to enter judgment if the parties intend to seek enforcement of the arbitration. Accordingly, the Court ORDERS Plaintiffs to file a proposed judgment by **May 19, 2020**. The Court also ORDERS both parties to file responses as to these two issues by **May 19, 2020**.

Dated: May 12, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge